

B. McKay Mignault, Chief Bankruptcy Judge
United States Bankruptcy Court

Dated: April 16th, 2021

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA
### IN CHARLESTON

| | |
|---|---|
| IN RE: | CASE NO. 2:20-bk-20334 |
| SCOTT ALLEN KEFFER, | CHAPTER 13 |
| Debtor. | JUDGE B. MCKAY MIGNAULT |

## MEMORANDUM OPINION AND ORDER

Pending are two motions filed by the Debtor: (1) the Motion to Convert Case From Chapter 13 Case to Chapter 11 SubChapter V (the "Motion to Convert") [dckt. 59]; and (2) the Motion to Extend Deadlines for Chapter 11 SubChapter V Filings Upon Conversion (the "Motion to Extend", and, together with the Motion to Convert, the "Motions") [dckt. 64]. The United States Trustee ("UST") filed a Limited Objection to the Motion to Convert (the "Limited Objection") [dckt. 61].

The Court held a hearing on the Motions on March 11, 2021 (the "Motions Hearing"). After hearing arguments from the parties, the Court continued the hearing for thirty days and stated that it anticipated issuing a ruling either in writing prior to the continued hearing or, if it required further briefing, would issue a briefing schedule.

The Court determined that no further briefing was required, and, thus, the matter is ripe for adjudication. This matter is a statutorily core proceeding under 28 U.S.C. §§ 157(b)(1) and (b)(2). The Court has constitutional authority to enter final orders in this matter.

## I.

### A.      Factual and Procedural History

Mr. Keffer filed his Chapter 13 Petition on September 16, 2020.  The Court entered the Order for Relief on the same day.  In his schedules, he listed assets of $436,462.50 and liabilities of $793,780.42.  In addition to his Petition and Schedules, Mr. Keffer also submitted his Chapter 13 Plan on September 16, 2020.  Mr. Keffer diligently progressed through the Chapter 13 process; he objected to proofs of claim, worked with the West Virginia State Tax Department, and filed tax returns.  However, the Chapter 13 Trustee continuously recommended that his Chapter 13 Plan *not* be confirmed, and she reported in her last recommendation (filed on January 8, 2021) that Mr. Keffer was delinquent in his plan payments and was behind $7,621.23 [dckt. 56].  In the meantime, on November 16, 2020, the Internal Revenue Service ("IRS") filed its Amended Proof of Claim No. 5-2, which states that the IRS's claim totals $681,609.92.

The above-captioned case came before the Court for a Chapter 13 Plan confirmation hearing on January 14, 2021.  Mr. Keffer reported at that hearing that the IRS's claim had increased his total liabilities such that they exceeded the debt limits for Chapter 13 cases and that he was no longer eligible for Chapter 13 relief.  At the January hearing, Mr. Keffer stated his intention to convert his case to one under Chapter 11, Subchapter V of the Bankruptcy Code ("SubChapter V").  The Motion to Convert was filed on February 1, 2021, and the Motion to Extend followed shortly thereafter on February 18, 2021.

At the Motions Hearing, Mr. Keffer largely stood on his filings and simply stated that his debts were over the Chapter 13 threshold and that he wished to convert to a SubChapter V case.  The Chapter 13 Trustee confirmed that Mr. Keffer's debts made him ineligible for Chapter 13 relief.  The UST stated that it had no objection to conversion, but noted that the situation was

complicated by the very tight timelines of SubChapter V plans.  Additionally, the UST explained

that the situation at hand is one of first impression in the Southern District of West Virginia

Bankruptcy Court.

### B.    The Parties' Arguments

The parties herein are largely aligned; Mr. Keffer wishes to convert to SubChapter V, and

the UST's concerns are linked only to the extension of the case timelines following conversion.

In fact, the UST stated at the Motions Hearing that it had no objection to conversion in this

particular case.

In Mr. Keffer's Motion to Convert, he cites no legal standard, nor does he point to any

pertinent caselaw.  He simply asserts that he is no longer eligible for Chapter 13 relief, and he files

the Motion to Convert on a good faith basis.

In its Limited Objection, the UST describes the crux of the issue here: the deadlines for

SubChapter V, established by governing law, had already passed in Mr. Keffer's case before he

filed his Motion to Convert.  The UST pointed to several courts which have considered this

emerging issue and noted that there is indeed a split of authority.  Regardless of the differing

outcomes, an important facet of the courts' analysis in all the cases is the debtors' requests to

extend the SubChapter V deadlines.  At the time that the Limited Objection was filed, Mr. Keffer

had not filed a Motion to Extend, and the UST expressed concern at that deficit  It requested that

the Court provide guidance not only as to Mr. Keffer's ability to convert, but also the necessity of

separate motions to extend deadlines in situations such as these.

Mr. Keffer filed the Motion to Extend in response to the UST's worries.  He requested that

the Court extend the applicable SubChapter V deadlines so that his case could be properly

converted.  Mr. Keffer also noted that no creditors would be prejudiced if the Court granted his

Motions.

## II.

### A.    Applicable Law

Conversion from Chapter 13 to Chapter 11 is governed by 11 U.S.C. § 1307(d), which

states that, "at any time before the confirmation of a plan under section 1325 of this title, on request

of a party in interest or the United States Trustee and after notice and a hearing, the court may

convert a case under this chapter to a case under chapter 11 or 12 of this title." 11 U.S.C. § 1307(d).

Courts have discretion when deciding whether to convert cases from Chapter 13 to Chapter 11,

and conversion is not an absolute right.  *In re Lester*, 409 B.R. 364, 370 (Bankr. W.D. Va. 2009).

Although caselaw on the subject is "sparse," there are certain factors that courts have considered

when evaluating conversions from Chapter 13 to Chapter 11.  *Lester*, 409 B.R. at 370.  That list

includes

> willful failure of the debtor to abide by orders of the court,
> unreasonable delay by the debtor that is prejudicial to the creditors,
> inability to effectuate a plan, failure to timely file a plan, bad faith,
> and, in the case of debtors whose debts are primarily consumer
> debts, whether the granting of relief would be a substantial abuse.

*Lester*, 409 B.R. at 371 (quoting *Anderson v. United States (In re Anderson)*, 165 B.R. 445, 448-

49 (S.D. Ind. 1994)) (internal quotation marks omitted).  Importantly, "§ 1307(d) contemplates

some balancing between the competing interests of creditors *and* debtors." *Lester*, 409 B.R. at

372 (emphasis in original).  However, one unambiguous requirement for conversion under §

1307(d) is that it must be accomplished prior to confirmation of a Chapter 13 Plan.  *In re Krandell*,

311 B.R. 438, 439 (Bankr. D. Md. 2004).

Dismissal of Chapter 11 cases is governed by 11 U.S.C. § 1112 and is appropriate when "cause" is shown.  11 U.S.C. § 1112(b)(1).  In the list of situations constituting "cause" contained in § 11 U S.C. § 1112(b)(4), a Chapter 11 case may be dismissed for "failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court . . . ."  11 U.S.C. § 1112(b)(4)(J).  However, there exists a "safe harbor" provision in § 1112(b)(2): conversion or dismissal may not be granted if the court finds unusual circumstances establishing that conversion or dismissal is not in the best interests of creditors and that there is a reasonable likelihood that a plan will be confirmed within the timeframes in § 1121(e) and § 1129(e).  11 U.S.C. § 1112(b)(2).

These two sections are important because "[t]he right to convert a case . . . is not absolute," and "a debtor should not be able to convert his case when conversion would result in immediate dismissal or reconversion."  *In re Wetter*, 620 B.R. 243, 249-50 (Bankr. W.D. Va. 2020) (citing *Marrama v. Citizens Bank of Mass.*, 549 U.S. 364 (2007)).  Thus, Chapter 13 debtors are only able to convert to cases in which they are eligible to be debtors.  11 U.S.C. § 1307(g).  As a result of the *Marrama* decision, in this situation, a debtor "must qualify under Chapter 11 of the Bankruptcy Code."  *Wetter*, 620 B.R. at 250.  "Chapter 11 debtors are subject to having their cases dismissed for 'cause,' and bad faith can be a basis for dismissal for 'cause' . . . ."  *Wetter*, 620 B.R. at 250. It follows, then, that any conversion from Chapter 13 to SubChapter V, after meeting the requirements of § 1307, must also survive § 1112(b)'s dismissal provisions: "[i]n line with *Marrama*, conversion should not be permitted where grounds for conversion or dismissal would be triggered immediately."  *Wetter*, 620 B.R. at 251.

SubChapter V was added to Chapter 11 of the Bankruptcy Code through enactment of the Small Business Reorganization Act of 2019 (the "SBRA"), which became effective on February

19, 2020. SubChapter V is an "elective Chapter for small business debtors for whom the existing provisions of chapter 11 were not providing relief." *In re Tibbens*, No. 19-80964, 2021 WL 1087260, *1 (Bankr. M.D.N.C. Mar. 19, 2021) (Kahn, J.); *see also In re Trepetin*, 617 B.R. 841, 843 (Bankr. D. Md. 2020) (Harner, J.). It is, "by its very nature [] intended to be an expedited process" and "provides qualifying debtors with some powerful and cost-saving restructuring tools not otherwise available to Chapter 11 debtors." *In re Wetter*, 620 B.R. 243, 251 (Bankr. W.D. Va. 2020) (Black, J.) (quoting *In re Seven Stars on the Hudson Corp.*, 618 B.R. 333, 346 (Bankr. S.D. Fla. 2020)). The benefits of SubChapter V include:

> (1) elimination of the absolute priority rule, which allows equity holders to retain their ownership interests without paying all creditors in full;
> (2) no mandatory appointment of a creditors committee;
> (3) no mandatory requirement to file a disclosure statement;
> (4) appointment of a Subchapter V trustee to assist in developing a consensual plan, while leaving the debtor in possession of its assets and in control of its business;
> (5) the exclusive right (which cannot be terminated) to file a plan;
> (6) the ability to modify a claim secured only be a security interest in the debtor's principal residence, if new value received in connection with granting the security interest was used primarily in connection with the debtor's business and not primarily to acquire property;
> (7) the ability to confirm a plan even if all classes reject the plan;
> (8) the ability to pay administrative expenses over time under a plan;
> (9) modification of the disinterested requirements of Section 327(a) for a professional that holds a prepetition claim of less than $10,000; and
> (10) elimination of the requirement to pay quarterly U.S. Trustee fees . . . .

*Seven Stars*, 618 B.R. at 340. These powers and cost-saving provisions are "extraordinary," "certainly laudable," and "helpful and necessary" for small business debtors. *Seven Stars*, 618 B.R. at 340. However, they do not come without restrictions, as "the overall purpose and function of the Bankruptcy Code is to strike a balance between creditor protection and debtor relief." *Seven*

*Stars*, 618 B.R. at 340.  Namely, SubChapter V "grant[s] creditors a very important protection: the

requirement that a Subchapter V case proceed expeditiously." *Seven Stars*, 618 B.R. at 340.

     In furtherance of that creditor protection, SubChapter V blueprints several tight deadlines.

It is crucial to remember that the deadlines run from the date of the order for relief in the bankruptcy

case.  *Trepetin*, 617 B.R. at 843.  The date of the order for relief "is important in determining the

rights and duties of the debtor and its creditors" because it "triggers a number of events and

deadlines in a bankruptcy case." *Trepetin*, 617 B.R. at 844-45.  In converted cases, pursuant to 11

U.S.C. § 348, the "order for relief in the original case continues, with the same date, as an order

for relief under the new chapter." *Trepetin*, 617 B.R. at 844; 11 U.S.C. § 348(a).  The order for

relief takes on the conversion order date under only a few circumstances.  *Trepetin*, 617 B.R. at

844.  Section 348(b) states that the order for relief will continue with the same date in the instance

that a case is converted to a standard Chapter 11 under § 1121 of the Code.  *Trepetin*, 617 B.R. at

844.  However, § 1121 is not applicable in SubChapter V cases.  *Trepetin*, 617 B.R. at 844.  And,

while § 348(b) "resets a debtor's exclusive period for filing a plan in a standard Chapter 11 case"

upon conversion, that "reset" is not available to small business or SubChapter V debtors.  *Trepetin*,

617 B.R. at 845.

     The first deadline is the status conference requirement: "not later than 60 days after the

entry of the order for relief under this chapter, the court shall hold a status conference . . . ." 11

U.S.C. § 1188(a).  The Court may only extend that deadline "if the need for an extension is

attributable to circumstances for which the debtor should not justly be held accountable." 11

U.S.C. § 1188(b).  Courts have opined that this deadline is for the court, and not for a debtor,

because if "the Court has not even set a status conference," the missed deadline is not one "for

which the Debtor, specifically or in general, should be held accountable." *Wetter*, 620 B.R. at 252;

*see also Tibbens*, 2021 WL 1087260 at *5 ("The deadline to conduct the status conference, therefore, is a deadline for the court, rather than for the debtor," and "[s]ubchapter V does not contain any consequence for the court's failure to timely conduct the status conference.").

The second deadline governs the Plan: "the debtor shall file a plan not later than 90 days after the order for relief . . . ." 11 U.S.C. § 1189(b). Like the status conference deadline, the plan filing deadline may be extended by the Court "if the need for the extension is attributable to circumstances for which the debtor should not justly be held accountable." 11 U.S.C. § 1189(b).

The phrase "attributable to circumstances for which the debtor should not justly be held accountable" does not appear in Chapter 11, but it is used elsewhere in the Code. *Seven Stars*, 618 B.R. at 344. Section 1221 uses the same language. 11 U.S.C. § 1221; *Seven Stars*, 618 B.R. at 344. According to one court, "[b]ased on a plain reading of this phrase, it is a clearly higher standard than the mere 'for cause' standard set forth in . . . Rule 9006(b) (governing extensions of time generally) and . . . section 1121(d)(1) (governing extensions of a non-subchapter V debtor's exclusive period to file a Chapter 11 plan)." *Seven Stars*, 618 B.R. at 344. In interpreting the same § 1221 language, "[c]ourts . . . have held that it effectively requires the bankruptcy court . . . to find that the delay necessitating the extension was caused by circumstances beyond the debtor's control." *Seven Stars*, 618 B.R. at 344 (internal quotation marks omitted). Another court attempted to understand the phrase by looking at dictionary definitions of some of the words: "justly means in accordance with justice, law, or fairness, and [] accountable is best defined as liable to be called to account or answer for responsibilities and conduct." *Seven Stars*, 618 B.R. at 344-45 (quoting *Trepetin*, 617 B.R. at 849) (internal quotation marks omitted). In conclusion, "the appropriate inquiry is whether the Debtor is fairly responsible for his inability to timely submit

his status report, attend the status conference, or file a plan in this Subchapter V case." *Seven Stars*, 618 B.R. at 345 (quoting *Trepetin*, 617 B.R. at 849-50) (internal quotation marks omitted).

Two Federal Rules of Bankruptcy Procedure are also important to this decision: Rule 1009 and Interim Rule 1020 (adopted by this Court on May 21, 2020, via General Order No. 20-06). Rule 1009 states that "[a] voluntary petition . . . may be amended by the debtor as a matter of course at any time before the case is closed." Fed. R. Bank. P. 1009(a). Interim Rule 1020 requires a debtor to state whether it is a SubChapter V debtor and whether it elects to proceed under SubChapter V. Fed. R. Bank. P. 1020 (Interim). Importantly, neither rule "prevents a small business debtor from filing an amended petition to elect to have Subchapter V apply to its case . . . ." *Seven Stars*, 618 B.R. at 342.

Only a handful of courts have issued opinions in like circumstances. They come down on both sides of the issue: some have allowed debtors to convert to SubChapter V notwithstanding the fact that the deadlines have passed, some have allowed conversion but have declined to extend the deadlines, and still and others have not allowed conversion at all. This Court will consider the reasoning of both perspectives.

In the Bankruptcy Court for the Southern District of Florida, Judge Scott Grossman opined that a small business debtor may not elect SubChapter V status after expiration of the statutory deadlines for the status conference and plan filing contained in § 1188 and § 1189. *Seven Stars*, 618 B.R. 333. The debtor in that case, an entity which operated a trampoline park within a large indoor entertainment facility, filed a small business Chapter 11 Petition. *Seven Stars*, 618 B.R. at 337. Soon thereafter, the COVID-19 Pandemic hit and all "nonessential retail and commercial business locations" were closed by order of Broward County, Florida. *Seven Stars*, 618 B.R. at 337-38. Those business locations, including the one operated by the debtor, remained closed for

several months. *Seven Stars*, 618 B.R. at 338. The debtor at that time continued litigation within its Chapter 11 case, which resulted in the debtor having to pay $130,000 to its lessor on the effective date of any confirmed Chapter 11 Plan. *Seven Stars*, 618 B.R. at 338. Not able to make that payment, the debtor, over a year after its petition date, filed an amended Chapter 11 Petition in which it attempted to proceed under SubChapter V. *Seven Stars*, 618 B.R. at 338. It is important to note that the debtor at that point did not seek to extend the timelines contained in § 1188 and § 1189. *Seven Stars*, 618 B.R. at 338. The *Seven Stars* court was faced with the same question as is presented herein: may a debtor elect to convert its case and proceed under SubChapter V if the SubChapter V timelines contained in § 1188 and § 1189 have already passed? *Seven Stars*, 618 B.R. at 338-39.

Judge Grossman first explained that, by converting so far into its case, the debtor, "upon amending its petition to elect to proceed under Subchapter V more than a year into its case, [] immediately put itself in default of the requirements of both Sections 1188(a) and 1189(b)." *Seven Stars*, 618 B.R. at 338-39. In addition to the SubChapter V requirements, 11 U.S.C. § 1112(b)(4)(J) was also implicated, as a debtor's failure to file a disclosure statement or plan, or to confirm a plan, within the time fixed by the Bankruptcy Code, constitutes cause for dismissal of the case under § 1112(b). *Seven Stars*, 618 B.R. at 339.

First reviewing Congress's intent in enacting SubChapter V, Judge Grossman noted that normal Chapter 11 cases can be "prohibitively expensive" and that Congress approved SubChapter V to "permit qualifying small business debtors to file bankruptcy in a timely, cost-effective manner," which would "hopefully allow[] them to remain in business . . . ." *Seven Stars*, 618 B.R. at 339-40. He stated that "Congress purposefully set a short deadline for a debtor to file a plan

under SubChapter V, and set a very high standard for an extension of that deadline." *Seven Stars*, 618 B.R. at 345.

Addressing the plain language of the statute, Judge Grossman noted that the SBRA is silent "as to whether it applies to pending cases or only to cases commenced . . . after its effective date." *Seven Stars*, 618 B.R. at 341.  Noting that several recent decisions indicated that "the Court 'has the necessary lawful power and authority to allow this case to proceed under new subchapter V,'" Judge Grossman narrowed in on the true dilemma: "to determine whether this case should be dismissed, the Court must determine whether [the debtor] should be granted an extension of the Section 1189(b) plan filing deadline (as well as the Section 1188 status conference deadline)." *Seven Stars*, 618 B.R. at 343-44.  It followed that, if "an extension is not warranted, then . . . cause exists for dismissal under Section 1112(b)(4)(J) because the debtor has failed to file a plan within the time fixed by the Bankruptcy Code." *Seven Stars*, 618 B.R. at 343-44.

Moving to the debtor's eligibility for an extension, Judge Grossman evaluated whether the need for the extension was "attributable to circumstances for which the debtor should not justly be held accountable." *Seven Stars*, 618 B.R. at 344.  In doing so, he looked to the *Trepetin* decision and contrasted that with his own reading. *Seven Stars*, 618 B.R. at 345.  The *Trepetin* court asked "whether *the debtor* was responsible for his inability to meet the[] deadlines," whereas "[t]he statute asks if the need for an extension is due to *circumstances* beyond the debtor's control." *Seven Stars*, 618 B.R. at 344.  Judge Grossman found himself aligned with the latter interpretation of the language. *Seven Stars*, 618 B.R. at 345.  In *Trepetin*, discussed *infra*, the court found that the debtor was not responsible for missing the deadlines, as his Chapter 7 case and subsequent conversion caused him to violate the SubChapter V deadlines. *Seven Stars*, 618 B.R. at 345. Judge Grossman disagreed with that conclusion: he felt that "[t]he circumstances . . . were entirely within

the debtor's control: he filed for Chapter 7 and he elected to convert to Chapter 11 and proceed under Subchapter V. . . . No external factors – beyond his control – contributed to his inability to comply with these deadlines." *Seven Stars*, 618 B.R. at 345. Judge Grossman stated plainly that "[w]here a debtor elects into Subchapter V after expiration of the statutory deadlines, . . . the debtor should justly be held accountable for those circumstances, because the debtor created them . . . ." *Seven Stars*, 618 B.R. at 346.

Ultimately, Judge Grossman ruled that, although the debtor and its efforts at reorganization were severely hampered by the COVID-19 Pandemic, the debtor could not proceed under SubChapter V. *Seven Stars*, 618 B.R. at 347. He stated that the debtor's inability to meet the deadlines was *not* due to COVID-19, but was instead due to its own decision to proceed under SubChapter V, which does not meet the requirement that the extension be fairly attributable to circumstances for which it should not justly be held accountable. *Seven Stars*, 618 B.R. at 346-47. In doing so, Judge Grossman disagreed with *Trepetin* (and others), which had "liberally" read § 1188(b) and § 1189(b) to allow extensions for debtors electing to proceed under Subchapter V after the deadlines had passed. *Seven Stars*, 618 B.R. at 347.

The *Trepetin* case was decided by Judge Michelle Harner of the Bankruptcy Court for the District of Maryland on July 7, 2020. *Trepetin*, 617 B.R. at 841. Judge Harner framed the question before her: "[i]s the SBRA available to a debtor who first files a bankruptcy case under a chapter other than chapter 11 of the Code, but then determines that it is eligible for, and could benefit from, Subchapter V?" *Trepetin*, 617 B.R. at 843. In contrast to *Seven Stars*, she held in the affirmative and accordingly set extended deadlines for the debtor under § 1188 and § 1189. *Trepetin*, 617 B.R. at 843. Judge Harner stated that, "to hold otherwise would preclude a debtor, who has not

engaged in any dilatory or wrongful conduct, from utilizing provisions of the Code specifically designed to help small businesses and their creditors." *Trepetin*, 617 B.R. at 843.

The debtor in *Trepetin* was an individual operating a small business. *Trepetin*, 617 B.R. at 843. He filed a Chapter 7 case in February 2020, and thereafter complied with the applicable provisions of the Code. *Trepetin*, 617 B.R. at 843. Although it appeared that he was on track for a Chapter 7 discharge, the debtor filed a motion to convert his case to SubChapter V on June 11, 2020, which was more than 90 days after the order for relief was entered. *Trepetin*, 617 B.R. at 843. He simultaneously requested that the court extend the deadlines imposed in § 1188 and § 1189. *Trepetin*, 617 B.R. at 843-44. The court in fact first granted the debtor's motion to convert, and the debtor filed an amended petition in which he elected to proceed under SubChapter V. *Trepetin*, 617 B.R. at 844. Judge Harner then addressed the question of extending the deadlines. *Trepetin*, 617 B.R. at 844. Notably, no party opposed the debtor's request for extension of the deadlines. *Trepetin*, 617 B.R. at 850.

Judge Harner noted that the date of the order for relief is highly important in bankruptcy cases, and, is particularly so in SubChapter V cases "as the debtor is the only party who may file a plan and has only a limited amount of time to do so." *Trepetin*, 617 B.R. at 845. It follows that "in a conversion situation as that before the Court, the Subchapter V case may be over before it even begins if certain deadlines cannot be extended." *Trepetin*, 617 B.R. at 845.

After a discussion of § 348(b) and its omission of small business and SubChapter V debtors, Judge Harner moved to the statutory language of SubChapter V and its context. *Trepetin*, 617 B.R. at 846. She noted that, although Congress desired an accelerated process for SubChapter V in enacting the SBRA, it also expressed "significant concern for small business debtors, wanting to provide them with a realistic option for reorganizing and saving their business operations."

*Trepetin*, 617 B.R. at 846-47.  In ultimately making her decision, Judge Harner stated that she would "strive to balance the[] goals of speed and access to a realistic organization scheme in applying the language of the Code to the facts of [her] case." *Trepetin*, 617 B.R. at 847.

Moving to the language permitting extensions for the deadlines in § 1188 and § 1189, Judge Harner, like Judge Grossman, looked to the parallel language in § 1221.  *Trepetin*, 617 B.R. at 848.  She reiterated that "[c]ourts and commentators have generally interpreted the language in section 1221 to require that the debtor clearly demonstrates that the debtor's inability to file a plan is due to circumstances beyond the debtor's control." *Trepetin*, 617 B.R. at 848 (quoting *In re Gullicksrud*, No. 16-11860-12. 2016 WL 5496569, *2 (Bankr. W.D. Wisc. Sept. 29, 2016)) (internal quotation marks omitted).  As discussed above, Judge Harner looked to the plain dictionary definitions for several of the words in the phrase "circumstances for which the debtor should not justly be held accountable." *Trepetin*, 617 B.R. at 848-49.  The question she asked of herself was "whether the Debtor is fairly responsible for his inability to timely submit his status report, attend the status conference, or file a plan in this Subchapter V case." *Trepetin*, 617 B.R. at 849.

At that point, no party had accused the debtor of being dilatory or acting in bad faith in any way. *Trepetin*, 617 B.R. at 849.  He had complied with all provisions of Chapter 7. *Trepetin*, 617 B.R. at 849.  He was not "manipulating the timing of his original bankruptcy filing and his requested conversion in a manner that unfairly prejudiced some or all of his creditors . . . ." *Trepetin*, 617 B.R. at 849.  Judge Harner stated that his "need for an extension appear[ed] fairly attributable to factors outside of his control, namely the conversion process and requirements of chapter 7 versus chapter 11 of the Code." *Trepetin*, 617 B.R. at 850.  Importantly, she noted that the analysis of whether a debtor meets the threshold for extensions of the timelines is "fact-

intensive and focused on the Debtor's conduct and potential prejudice to creditors." *Trepetin*, 617 B.R. at 850.

Judge Harner held that "the Debtor should have access to Subchapter V of the Code and has established adequate grounds to extend the deadlines . . . ." and that he "should not be held justly accountable for his inability to meet those deadlines." *Trepetin*, 617 B.R. at 850. She went on to set extended deadlines for the debtor.

Another case very recently decided within the Fourth Circuit is the *Tibbens* case out of the Bankruptcy Court for the Middle District of North Carolina. *Tibbens*, 2021 WL 1087260. Judge Benjamin Kahn ruled in that case, regarding the § 1188 and § 1189 deadlines, that "[a] court may extend the deadlines in §§ 1188 and 1189 even after the periods have lapsed," and "[a]lthough this Court may extend these periods despite their prior expiration, it only may do so if the need for the extensions is due to circumstances for which the debtor should not justly be held accountable." *Tibbens*, 2021 WL 1087260 at *8.

The *Tibbens* debtor filed a Chapter 13 Petition two months prior to the effective date of the SBRA. *Tibbens*, 2021 WL 1087260 at *2. He progressed through Chapter 13 and eventually filed a motion to sell real property free and clear. *Tibbens*, 2021 WL 1087260 at *2. Several parties objected, and it came out at a hearing that the debtor was attempting to sell his property to his romantic partner. *Tibbens*, 2021 WL 1087260 at *3. At a confirmation hearing just after the sale motion hearing, the debtor admitted to the court that the sole purpose of his Chapter 13 case was to sell his property to his romantic partner. *Tibbens*, 2021 WL 1087260 at *3. Following denial of confirmation, the debtor filed an amended motion to sell real property and a second Chapter 13 plan. *Tibbens*, 2021 WL 1087260 at *3. The Chapter 13 Trustee immediately filed a motion to dismiss the case because the debtor had exceeded the debt limitations for Chapter 13 cases.

*Tibbens*, 2021 WL 1087260 at *4. The debtor withdrew his amended sale motion and filed a
motion to convert his case to one under SubChapter V. *Tibbens*, 2021 WL 1087260 at *4. At a
joint hearing on the motion to dismiss and the motion to convert, the debtor admitted inaccuracies
in his schedules, testified inconsistently, and was accused of acting with a lack of good faith.
*Tibbens*, 2021 WL 1087260 at *4. Furthermore, it was alleged that conversion would be futile
because the debtor could not meet the deadlines under § 1188 and § 1189 and could not fund a
Chapter 11 plan. *Tibbens*, 2021 WL 1087260 at *4.

The court first looked at whether conversion alone was proper and considered whether it
would be futile because the debtor would immediately run afoul of § 1112(b). Judge Kahn first
explained that the record was insufficient to show that the debtor was acting in bad faith. *Tibbens*,
2021 WL 1087260 at *4-5. The record did not establish that the debtor would be unable to confirm
a Chapter 11 plan. *Tibbens*, 2021 WL 1087260 at *4-5. Therefore, it could not be proven that
conversion would be futile, which is a requirement for bad faith filings, pursuant to the rule stated
in *Carolin Corp. v. Miller*, 886 F.2d 693 (4th Cir. 1989). *Tibbens*, 2021 WL 1087260 at *4-5.

Judge Kahn then explored the ramifications of conversion after expiration of the § 1188
and § 1189 deadlines. *Tibbens*, 2021 WL 1087260 at *5. He first noted that the § 1188 status
conference deadline is really a deadline for the court, and that "[s]ubchapter V does not contain
any consequences for the court's failure to timely conduct the status conference." *Tibbens*, 2021
WL 1087260 at *5.

Regarding the § 1189 plan deadline, Judge Kahn discussed the decision in *Seven Stars* and
stated that he respectfully disagreed. *Tibbens*, 2021 WL 1087260 at *5. Comparing and
contrasting dismissal for failure to timely file a plan under § 1112(b)(4)(J), along with the
differences between a small business Chapter 11 and a SubChapter V case, Judge Kahn reasoned

that Congress did not intend to have "a late filed plan doom a subchapter V case." *Tibbens*, 2021 WL 1087260 at *6.  He looked to the safe harbor provision in § 1112(b)(2) which prevents dismissal or conversion if, among other things, the debtor can establish that it is reasonably likely that a plan will be confirmed within a reasonable time. *Tibbens*, 2021 WL 1087260 at *6.  Judge Kahn thought that the safe harbor provision demonstrates that "a failure to comply with these deadlines should not be itself be fatal to confirmation . . . ." and stated that the legislative history and caselaw were in agreement.  *Tibbens*, 2021 WL 1087260 at *7.  He held that "the Debtor's failure to timely file the plan, standing alone, is insufficient to prohibit confirmation under §§ 1129(a)(1) or 1129(a)(2)" and granted the motion to convert.  *Tibbens*, 2021 WL 1087260 at *7.

Judge Kahn then moved to the issue of actually extending the deadlines under SubChapter V.  *Tibbens*, 2021 WL 1087260 at *8.  He noted that it was indeed necessary to extend the deadlines because the date of the order for relief was not altered due to the conversion date.  *Tibbens*, 2021 WL 1087260 at *8.  Judge Kahn looked to the standards for extension under § 1188 and § 1189 and related them to the parallel language in Chapter 12 cases.  *Tibbens*, 2021 WL 1087260 at *9. He also considered the statements from *Trepetin* court that, although it extended the deadlines based on the facts before it, the court "could envision a case in which the circumstances surrounding conversion could weigh against any extension . . . ."  *Tibbens*, 2021 WL 1087260 at *9.  Because of the specific circumstances of the case, Judge Kahn declined to extend the deadlines, stating that numerous delays "occurred in the administration of the chapter 13 case that were fully within the debtor's control and for which he should be held accountable."  *Tibbens*, 2021 WL 1087260 at *9.  Specifically, he filed a "facially unconfirmable" Chapter 13 Plan, failed to comply promptly to court directives, failed to correct deficiencies in his schedules, and was dishonest about the nature of his property sale.  *Tibbens*, 2021 WL 1087260 at *9.

### B.    Analysis

This Court, having reviewed both approaches to late SubChapter V conversions, believes that her sister bankruptcy courts in the Fourth Circuit (namely, the Middle District of North Carolina and the District of Maryland) provide the superior analysis of the present situation.  This Court, frankly, cannot endorse such a restrictive view of the applicable law as is counseled by the court in *Seven Stars*.  However, inasmuch as none of the cases studied have followed exactly the same analytic pattern, and none have articulated any kind of step-by-step basis upon which to evaluate motions to convert filed after the deadlines in § 1188 and § 1189 have passed, this Court will fashion its own evaluative device and apply it to the present facts.

Initially, the Court will inquire as to whether conversion is appropriate under § 1307(d).  Then, it will move to a discussion of § 1112(b) to determine whether conversion to Chapter 11 is proper, as it should only occur if the case will not be subject to immediate dismissal provisions under the new chapter.  In all cases involving debtors who attempt to convert to SubChapter V following expiration of the § 1188 and § 1189 deadlines, § 1112(b)(4)(j) will be triggered because a plan will not have been filed within the timelines prescribed by statute.  Therefore, the Court will then need to evaluate the debtor's request to extend the deadlines, which must be accomplished via separate motion.  If the debtor can meet the threshold for extending the § 1188 and § 1189 deadlines, then § 1112(b)(4)(j) may not operate to prevent conversion.  At that point, the Court will be able to decide whether conversion is appropriate, and, if so, will extend the § 1188 and § 1189 deadlines.

In the instant case, Mr. Keffer qualifies for conversion under § 1307(d).  First of all, he has not confirmed a plan in his Chapter 13 case.  Additionally, Mr. Keffer does not cause any concerns when evaluating his case under the factors outlined above.  There is no indication that he has

willfully failed to abide by Court orders, there are no allegations that he has engaged in dilatory

tactics, he has not been accused of acting in bad faith, and there is no contention that granting

conversion would be a substantial abuse of the Bankruptcy Code.

This Court also sees no impediment to conversion following the application of § 1112(b)

to the matter.  Other than the implication of § 1112(b)(4)(j), there has been no suggestion that Mr.

Keffer qualifies for dismissal under any of the other subsections of § 1112(b)(4).  Other than the

failure to timely confirm a plan, the Court sees no other "cause" which would require dismissal of

Mr. Keffer's case upon conversion.  And no party has argued differently.

With regards to § 1112(b)(4)(j), the Court will turn to Mr. Keffer's request to extend the

deadlines in § 1188 and § 1189.  According to statute, he must show that the "delay necessitating

the extension was caused by circumstances beyond [his] control."  11 U.S.C. §§ 1188(b), 1189(b).

When Mr. Keffer filed his Chapter 13 case, his assets and debts were within the statutory limits

for that chapter.  He timely filed his Chapter 13 Plan, and, among other things, filed tax returns.  It

was not until the IRS submitted its Amended Proof of Claim on November 16, 2020, that it became

apparent that Mr. Keffer could not continue in Chapter 13.  Yes, he surely must have known that

he would owe taxes, but he was not aware of the amount of those taxes until the IRS processed his

returns.  He reported to the Court on January 14, 2021, that he intended to convert to SubChapter

V and indeed filed his Motion to Convert eighteen days later.  It is clear to this Court that Mr.

Keffer should not justly be held accountable for the circumstances necessitating an extension of

the deadlines; he had no specific knowledge of what the IRS's claim would be and had no

premonition that it might throw a proverbial wrench into his Chapter 13 case.  Therefore, this Court

finds that an extension of the § 1188 and § 1189 deadlines is appropriate, and, accordingly, Mr.

Keffer will not run afoul of § 1112(b)(4)(j).   This Court will permit Mr. Keffer to convert his case to one under SubChapter V.

## III.

It is a brave new world for bankruptcy courts following enactment of the SBRA. SubChapter V is a valuable tool for qualifying debtors and will facilitate reorganizations that were not possible before. Yes, it would have been helpful for Congress to provide some guidance with respect to conversion from other bankruptcy chapters, but the drafters of our laws cannot be rightfully expected to think of every single esoteric possibility when undertaking their responsibilities.  So, it is up to the courts to interpret those laws as best they can when confronted with unanticipated fact patterns.

Here, Mr. Keffer filed a Chapter 13 case because he needed bankruptcy protection.  His debts ended up crossing the threshold from Chapter 13 to Chapter 11 eligibility mere months after his petition was filed because the IRS submitted a larger-than-anticipated proof of claim.  Mr. Keffer promptly moved to convert his case to one under SubChapter V, and the only concerning issue was the timeliness of his motion because the SubChapter V deadlines had already passed. Having analyzed decisions from the few courts faced with this specific issue, this Court has chosen to take the same course of action as her sister courts and allow conversion.  Accordingly,

**IT IS ORDERED** that Mr. Keffer's Motion to Convert be, and is hereby, **GRANTED.**

**IT IS FURTHER ORDERED** that Mr. Keffer's Motion to Extend be, and is hereby, **GRANTED.**

**IT IS FURTHER ORDERED** that the Clerk of Court shall issue the customary Operating Order for Debtors Electing SubChapter V.  The deadlines in § 1188 and § 1189 shall run from the date of entry of this order.